COCHRAN *v.* WHITE, TRUSTEE.

[No. 18,596.   Filed November 4, 1898.]

DRAINS.—*Repair of Tile Drains.—Trespass.*—A public tile drain was constructed over the lands of defendant and others and a portion thereof was allotted, by the county surveyor to defendant to keep in repair. In the original construction thereof the tile were not in all cases put down to the grade line of the specifications, yet the ditch was accepted by the drainage commissioner as complete according to the specifications. The township trustee gave defendant notice to repair his allotment by removing the tile and lowering same to the specification grade in order to drain more effectually the lands for which the ditch was intended. Defendant refused to comply with said notice, and refused permission to have such repairs made by the trustee, and caused the trustee to be arrested for trespass for entering upon his lands to make such repairs. *Held,* that it was the duty of the township trustee to make such repairs, and that defendant was not entitled to maintain his action. *pp. 435-441.*

SAME.—*Tile Drains.— Repairs.*— It was not intended by the provision of section 5637, Burns' R. S. 1894, relating to drainage that tiling so placed in a public ditch as to obstruct drainage need not be put in repair, but that a landowner by properly tiling his allotment might thus avoid the necessity of cleaning out his part of the ditch. *pp. 441, 442.*

From the Montgomery Circuit Court. *Affirmed.*

*G. W. Paul, H. D. Van Cleave* and *Will B. Paul,* for appellant.

*Benjamin Crane* and *Albert B. Anderson,* for appellee.

Cochran *v.* White, Trustee.

HOWARD, J.—This was an action to enjoin a township trustee from proceeding with the repair of an allotment of a public drain, the owner having neglected and refused to do the work. The facts were found specially by the court, and are as follows: (1) On and prior to November 25, 1889, there was in Madison township, Montgomery county, an open public ditch, passing over the lands of appellant and others, and theretofore established under provisions of the statutes in relation to public ditches. (2) On said day, appellant and others filed a petition in the Montgomery Circuit Court for the location of a public tile drain on and along the line of said open ditch, except 300 feet at the outlet thereof; and such proceedings were had that a tile drain was constructed, as prayed for, over and along the line of said open ditch, being a covered tile drain from its source to its mouth, and in length about two miles. On January 29, 1892, said tile drain was adjudged by the court to be duly established as the Catherine D. Morris ditch. (3) In April, 1897, the county surveyor of said county examined said tile drain, and, for the purpose of keeping the same in repair, as provided by section 2 of an act approved February 28, 1889 (Acts 1889, p. 53, section 5633, Burns' R. S. 1894), made allotment of said drain to the various tracts of land that had been assessed for its construction, allotting to the appellant 800 feet thereof, situated on his lands, and designated as sections 56 to 64, to be kept by him in repair. And said surveyor made a record of said allotments in the drainage record of said county, and gave appellant notice thereof, as provided by section 3 of said statute. (4) On July 9, 1897, the appellee was, and ever since has continued to be the duly qualified and acting trustee of said Madison township, and on said date, as such trustee, gave to appellant notice to re-

Cochran v. White, Trustee.

pair his said allotment, by leveling the same before August 5, 1897, to a depth and width not less than its original specifications. (5) Prior to the giving of said notice by appellee said tile drain had never been cleaned out or repaired in any manner. For several years immediately after its construction it had completely drained all the lands assessed for its construction; but at the time of giving said notice, and for several years prior thereto, said ditch, while completely draining the lands of appellant, failed to drain effectually lands assessed for its construction and situated at the head of the ditch. (6) In the original construction of the drain, the tile were not in all places put down to the grade line of the specifications, but in many places were a foot or more above such line. Yet the ditch was accepted by the drainage commissioner as complete according to the specifications; and what was meant by the notice given by appellee to appellant, requiring him to level his allotment, was that appellant should correct said fault in the original construction of the drain and put the tile down to the line required by the original specifications. The drain was in other respects in good repair at the time of giving said notice, being then in substantially the same condition in which it had been left after its acceptance by the drainage commissioner, but by reason of its faulty construction as aforesaid it failed fully to answer the purpose for which it had been constructed. (7) Prior to said August 5, 1897, all the tile in the allotments between appellant's allotment and the mouth of the drain, except about 300 feet which was in good repair, had been taken up, cleaned, repaired and put down again to the grade line of the original specifications. (8) Appellant failed and refused to level his said line of tile as required by said allotment and notice, and, on December 28, 1897, appellee, assuming

to perform the duties imposed upon him as township trustee by section 7 of said act as amended (Acts 1891, p. 48, section 5638, Burns' R. S. 1894), requiring him to make repairs in public drains when the owners refuse to do so, entered upon appellant's premises and uncovered the 800 feet of tile drain allotted to him, and was preparing to put the tile down to the grade prescribed in the original specifications, lowering such tile for that purpose from nothing to one foot, and intending to charge the cost of such improvement to appellant, as provided in said statute. But when appellee so entered upon the land for that purpose, appellant ordered him off his premises, refused permission to have such repairs made and caused appellee to be arrested for trespass.

The conclusions of law by the court were: (1) That it was the duty of appellee to enter upon appellant's premises and put the tile in the said allotment down to the grade as established in the original specifications; and, (2) that appellant is not entitled to maintain his action.

The position taken by counsel for appellant, in objecting to the conclusions of law, is stated as follows: "There is no statute authorizing the county surveyor to make allotments of a covered tile drain for the purpose of repairing the same; and there is no statute authorizing a township trustee to take up and lower the tile in a covered tile drain, nor to clean out and repair the same. And we contend that the county surveyor had no power or jurisdiction to make allotments of said covered tile drain for the purposes of repairing the same, and the township trustee had no power or jurisdiction to take up and lower said tile in said drain under the pretense of repairing or cleaning out said tile drain." Objection is likewise

made to the sufficiency of the notice given to appellant by the trustee.

In the position thus assumed we think counsel take too narrow a view of the scope and purpose of the laws enacted for the cleaning and repair of public drains. The language of the act of 1889, Acts 1889, *supra*, for the repair of drains could hardly be made more comprehensive, so as to include all public drains. By section 1 of the act (Acts 1889, p. 53, section 5632, Burns' R. S. 1894), it is provided, "That all ditches or drains that may have been, or may hereafter be, constructed under and by virtue of any law of this state, shall, except as hereinafter otherwise provided, after the allotment shall be made by the county surveyor as hereinafter provided, be under the charge and supervision of the trustee of the township in which the same are a part thereof, whose duty it shall be to see that the same are cleaned out and kept open and in proper repair, free from obstruction, so as to answer their purpose." By section 2 of the act provision is made for the allotments by the county surveyor. By sections 3 and 4 provisions are made for notice and a hearing before the surveyor, and by section 5 appeal to the circuit or superior court is provided for. Certainly a tile drain is included in "all drains that may have been, or may hereafter be, constructed under and by virtue of any law of this state." Appellant is himself hardly in a position to claim that this tile drain is not such a public drain. It was constructed under direction of the circuit court on petition filed by him and others.

Neither is he in a position to claim that the allotment for repairs made to him by the county surveyor, under section 2 of the statute cited, was not legal and valid. The statute itself provided for an appeal from such allotment, and if the same ought not to have

been made he should not then have stood silent and waited until this late day to make this collateral attack upon the surveyor's allotment.

But appellant must have failed even on appeal. The statute, as we have seen, made it the duty of the trustee to see that drains were "cleaned out and kept open and in proper repair, free from obstructions, so as to answer their purpose." In order to "answer their purpose," it is evident that the drains must continue to drain the lands that were assessed for their construction. But the court, in its fifth finding, found that while for several years immediately after its construction the drain in question had completely drained all the lands assessed for its construction; yet at the time of giving appellant notice to repair, and for several years prior thereto, said drain, although completely draining appellant's land, had failed to drain effectually certain lands assessed for its construction and situated at the head of the drain. The requirement made by the trustee was that the tile in appellant's allotment should be placed to a depth and width not less than the original specifications. All the landowners between appellant and the mouth of the drain had, within the time provided for in the statute, taken up and cleaned their tile and replaced it to the grade required in the original specifications; but appellant not only refused to perform this work, but was unwilling to allow the township trustee to do so. We think, as the court found, that the trustee was in the strict line of his duty.

It is not to be understood that a tile drain, quite the same as an open ditch, may not need repair. In section 1 of the act providing for tiling public drains (Acts 1893, p. 159, section 5649, Burns' R. S. 1894), it is required that the petition for such work shall show, "that such drain or any part thereof, can be tiled and

Cochran *v.* White, Trustee.

kept in repair at a cost less than the expense of keep-
ing the same in repair as an open drain."

It is true that one of the provisions of section 6 of
the act of 1889, *supra*, as amended by an act approved
March 3, 1893 (Acts 1893, p. 271, section 5637, Burns'
R. S. 1894), is "That where any person or persons shall
have converted that portion of said ditch running
through his or their lands into a blind ditch by put-
ting in drain tile of sufficient dimensions to serve the
purpose of drainage, said drain tile being continuous
from the head or beginning of such ditch through the
land of said owner or owners, and thus obviating the
necessity of working said ditch on his or their lands,
he or they shall be exempt from working any part of
said ditch, and the allotments herein provided shall
be made among the landowners, roads or railroads
only through whose land such ditch is open." It is
evident, however, that this provision, interpreted, as
it must be, in connection with the other provisions
of the statute, can have no relation to such a case as
that now before us. If appellant's tile drain were in
fact down to the grade fixed by the original specifi-
cations, it would "serve the purpose of drainage" and
thus obviate "the necessity of working said ditch" on
his land, and he would not have been called upon to
repair his allotment. Indeed it appears in the seventh
finding of the court, that 300 feet of the tiling in this
very ditch was left undisturbed, for the reason that
it "was not out of repair nor filled up." The statute
relied upon was merely intended to provide that a
landowner by properly tiling his allotment might
thus avoid the necessity of cleaning out his part
of the ditch. It could not have been intended by the
statute that tiling so placed as to obstruct drainage
need not be put in repair.

Some hardship, or even seeming injustice, may oc-

casionally result from the administration of the drainage laws. It is necessary, however, for the accomplishment of the object in view, to wit, the proper drainage by a single system of ditches of numerous tracts of land owned by many persons, that the enforcement of the various provisions of the statutes upon the subject must be left to the good judgment of the officers and tribunals placed in charge of such work. Not only must ditches be constructed, but they must also be kept in repair so as to accomplish the result intended. This work is committed to the judgment of those believed by the law-making power to be competent for the purposes, namely, county surveyors and township trustees, subject to such appeals as are provided for. See *Zimmerman* v. *Savage,* 145 Ind. 124. Judgment affirmed.