[S. F. No. 13118. In Bank.—January 27, 1931.]

CYPRESS LAWN CEMETERY ASSOCIATION (a Corporation), Respondent, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

[S. F. No. 13125. In Bank.—January 27, 1931.]

MOUNT OLIVET CEMETERY ASSOCIATION (a Corporation), Respondent, v. CITY AND COUNY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, City and County of San Francisco, for Appellant.

Brittain & Weise and Brobeck, Phleger & Harrison for Respondents.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, Los Angeles County, as *Amici Curiae*.

WASTE, C. J.—The above-entitled causes, consolidated for purposes of appeal, present appeals from judgments rendered after the overruling of general demurrers, and require determination of the single legal question as to whether or not the properties described in the respective complaints are, under the allegations thereof, exempt from taxation by the provisions of section 1b of article XIII of the state Constitution, adopted November 2, 1926. As the facts involved in these appeals differ only as to the party plaintiff and the property owned, we will set out in substance only the allegations of the complaint filed by the Cypress Lawn Cemetery Association.

It is therein alleged that the defendant was and is a municipal corporation; that the plaintiff was, and is a ceme-

tery association incorporated under sections 608 to 617, both inclusive, of the Civil Code, and has been and is maintaining a cemetery in the county of San Mateo wherein it has sold and granted the perpetual right of burial to many thousands of persons, and the bodies of many thousands of human dead have been buried; that said plaintiff has received a surplus from the sale of lots which, under sections 610 and 611 of the Civil Code, can only be used for the improvement, embellishment and preservation of said cemetery and not for dividends; that the plaintiff, under section 616 of the same code, has received trust moneys, and under section 617 has contracted for the perpetual care of certain lots in the cemetery for which it holds trust moneys; that, at the time of the assessment hereinafter mentioned it was the owner, by the investment of such trust moneys in accordance with said sections 616 and 617, of land, improved with a hotel then operated by it for peculiar reasons set forth, located in the city of San Francisco; that "said cemetery is used and held exclusively for the burial or other disposition of the human dead, and the said trust funds with the proceeds thereof, and the entire net proceeds and income from the whole of said trust fund is used exclusively for the care, maintenance and upkeep of said cemetery and the care of said dead; and, no part of said trust fund, nor of the proceeds or income thereof ever has been, or lawfully can be used or held for profit of said plaintiff, or its members". Then, appropriately, the taking of the various steps required by law for the assessment and levying of taxes against such property and the payment of such taxes under protest is alleged. Plaintiff seeks recovery of the amount of taxes so paid and their cancellation.

The constitutional provision here involved, and decisive of the present dispute, reads as follows: "All property used or held exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead, except as used or held for profit, shall be free from taxation and local assessment." Subject to the exception, this provision exempts from taxation and local assessment two kinds of property, classified on the basis of its use, but without consideration of the status or character of its owner or possessor, to wit, (1) that "used

or held exclusively for the burial or other permanent deposit of the human dead", and (2) that "used or held exclusively . . . for the care, maintenance or upkeep of such property" (i. e., the first class) "or such dead" (i. e., human dead so deposited or buried). The exception "except used or held for profit" qualifies the phrase "all property", and therefore restricts or limits both classes of property. We are here concerned only with the second class as affected by the exception.

■ Constitutional provisions and statutes exempting property from taxation are strictly construed. (*People* v. *Board of Directors*, 174 Ill. 177 [51 N. E. 198].) Grants of exemption from taxation cannot be allowed unless the intention to do so is expressed in direct terms or is fairly inferable from the language of the instrument by which the right is claimed. (*Pasadena University* v. *County of Los Angeles*, 190 Cal. 786, 791 [214 Pac. 868].) ■ It is apparent from a reading of the above constitutional provision that property falling within the second class to be exempt must possess two characteristics, namely, it must fall within the limitation that it be used or held exclusively for the care, maintenance or upkeep of burial grounds, and it must also fall without the exception that it be used or held for profit. While it may be accepted as true that the entire income derived from the hotel is devoted exclusively to the care and maintenance of respondent's cemetery, we are not prepared to say that, because of such application of the income, the hotel itself, within the meaning of the constitutional provision, is therefore *exclusively* appropriated to such use. Its direct and primary use is the housing of guests. The mere fact that it was purchased with cemetery or perpetual care trust funds and that the income therefrom must, under the law, be used or held solely for the care and maintenance of the burial grounds, cannot reasonably be said to work an exemption of the hotel itself. To so hold would be to read into the constitutional provision something not there present, for the exemption, if any, is given to the property itself, without regard to its income-producing capacity or the disposition of such income. The mere fact that the disposition of the income is beneficial to the burial grounds, which are exempt, should not serve to extend that exemption

through the income back to the property from which the income is derived. While the application of the income derived from the operation of the hotel undoubtedly assists, and perhaps materially so, in the proper maintenance of the nontaxable burial grounds, and lends value thereto, this alone should not work an exemption of the hotel proper. (*Hart* v. *Plum,* 14 Cal. 149, 154.) Had it been the intention to grant the exemption upon the basis of the use of the income from property rather than upon the use of the property itself, such intention could, and probably would, have been directly and positively expressed. We conclude, therefore, that the property for which the exemption is now claimed does not satisfy the constitutional requirement that it be "used or held *exclusively* . . . for the care, maintenance or upkeep" of respondent's cemetery grounds. This conclusion makes it unnecessary for us to determine whether said property falls within or without the exception which excludes from the constitutional exemption property "used or held for profit". Nor do we find it necessary to here determine the kind or character of property, in addition to burial grounds proper, intended to be included within the constitutional exemption. We expressly confine our decision to the problem now before us.

It is in accordance with the common wish of mankind that the places where the dead are buried should be protected and preserved against interference of possible sales for unpaid taxes, and be kept free from molestation or desecration. Exemptions of cemetery property from taxation are but the expression of that wish. ■ That this is true as regards section 1b of article XIII, *supra,* appears from the argument made in favor of the proposed constitutional amendment and sent to all of the voters prior to the election at which it was adopted. The proponents of the measure urged that it "should have been adopted long ago in order to protect the last resting place of the departed. . . . The county assessors know that they cannot under the law seize and sell a burial lot containing a body and yet under the present law, they are compelled to levy an assessment against such a plot, thereby expending the time and money of the county in bookkeeping, etc., to no avail, and jeopardiz-

ing the title to a property that may be containing the last remains of some dear one. . . .

"Finally, only the cemetery property not held for profit and owned by those exclusively for burial purposes is exempted. It will not relieve from taxation property of cemetery associations and others which is to be sold for profit, but only property to be used exclusively for the burial of the dead, and this sacred property should be kept tax free. . . . " In *City of Pasadena* v. *Railroad Com.*, 183 Cal. 526, 530 [10 A. L. R. 1425, 192 Pac. 25], a reference is made to the argument or address of the proponents of a constitutional measure as evidence of the intention with which it was adopted. We cannot perceive how the wish to protect and preserve the resting place of the dead would be made effectual by exempting property, such as is herein involved, and which may be disposed of at any time and for any purpose. The question before us being one of constitutional construction, the holdings of other courts, though interesting and informative, have been of little assistance because of the different wording of the laws involved.

The judgments are, and each is, reversed, with instructions to the court below to sustain the respective demurrers without leave to amend the complaints, and thereupon to render judgment in favor of the defendant in each case.

Shenk, J., Seawell, J., Richards, J., Langdon, J., Preston, J., and Curtis, J., concurred.

Rehearing denied.